

## NUMBER 13-23-00424-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

### IN RE JUAN CRUZ VALLADARES

### On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Justice Silva[1]**

In this petition for writ of mandamus, relator Juan Cruz Valladares (Cruz) asserts that the trial court[2] abused its discretion by: (1) "ordering [him] to produce years of federal income tax returns"; (2) ordering him to produce documents in response to requests for

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number C-0804-23-L in the 464th District Court of Hidalgo County, Texas, and the respondent is the Honorable Joe Ramirez. *See id.* R. 52.2.

production which are overbroad and which include documents that belong to third parties; and (3) failing to allow him "to present evidence and argument" at the hearing on the motion to compel discovery. We conditionally grant the petition for writ of mandamus, in part, as to those documents that belong to third parties to the litigation. We deny the petition as to all other issues.

## I. BACKGROUND

On February 24, 2023, real party in interest Doggett Freightliner of South Texas, LLC (Doggett) filed suit against Cruz, King Co. Truck Center, LLC (King), and CHV Investments, LLC (CHV), and on June 28, 2023, Doggett filed a first amended petition, adding claims against JCV Ventures of The Rio Grande Valley, LLC (JCV), Bulldog Heavy Equipment, LLC, and Bulldog Equipment, LLC (collectively the Cruz Entities). Doggett asserted that Cruz owned and operated the Cruz Entities.

Doggett asserted that it employed Cruz as "a highly compensated sales manager" at its truck dealership in Pharr, Texas. Doggett hired Cruz in 2016 and terminated his employment in 2022. In connection with his employment, Cruz signed both a "Confidentiality, Non-Disclosure, Non-Piracy, and Noncompetition Agreement" (noncompetition agreement) and a "Conflict of Interest and Confidentiality Questionnaire and Acknowledgement" (conflict acknowledgment). In general, the noncompetition agreement, dated December 19, 2015, prevented Cruz from revealing Doggett's trade secrets and confidential information and from diverting customers and potential customers away from Doggett. In the conflict acknowledgment, signed on January 17, 2022, Cruz did not disclose any potential conflicts of interest in the acknowledgment but

2

"agree[d] to disclose further details as appropriate for evaluating any potential conflict arising hereunder, including but not limited to financial statements, bank statements, and/or tax information."

Doggett ultimately terminated Cruz "for mismanaging inventory, misrepresenting trade terms, and questionable business practices." Doggett thereafter allegedly discovered that Cruz "had been involved in a systematic scheme to take advantage of his position of trust with Doggett in order to enrich himself at Doggett's expense." Doggett asserted that Cruz and the Cruz Entities accepted "secret cash payments" from Doggett's vendors. Doggett alleged that Cruz acted in concert with King and CHV to defraud Doggett by sending its customers to King and CHV; by causing Doggett to purchase "junk trucks" from King which were salvage and not suitable for used truck sales; and by causing Doggett to pay fake invoices to King and CHV. Doggett further alleged that Cruz's malfeasance continued after it terminated Cruz's employment. According to Doggett, Cruz and the Cruz Entities interfered with Doggett's business by using its confidential information to contact Doggett's customers and divert business from Doggett to its competitors. Doggett sought to enforce Cruz's employment agreement and to prevent him from unfairly competing with Doggett and interfering with its business. Doggett pursued causes of action against the defendants including breach of fiduciary duty, trade secret misappropriation, fraud, fraud by non-disclosure, conspiracy, and breach of contract. Doggett sought damages, exemplary damages, a constructive trust, disgorgement, fee forfeiture, and temporary and permanent injunctive relief.

3

Cruz filed a first amended answer and counterclaim against Doggett asserting that Doggett breached his employment contract by failing to pay him five percent commission on his "Commissionable Gross Profit" and his annual bonus of five percent of Doggett's net profit.

On August 1, 2023, Doggett filed a motion to compel the production of documents from Cruz. Doggett alleged that Cruz failed to produce any documents in response to its requests for production. Doggett stated that King had produced copies of forty-two checks, dated May 2021 to March 2022, that were payable from King to "Cruz's affiliate" JCV. Doggett further asserted that during this period of time, King was a Doggett vendor and customer, Cruz was employed by Doggett and was responsible for Doggett's relationship with King, Cruz failed to disclose these payments to Doggett, and Cruz deposited these checks into a bank account held in JCV's name. Doggett also alleged that JCV's tax preparer had produced JCV's bank statements for May 2021 to December 2021 and that these statements "show Cruz spent at least $450,000 on a variety of personal items, including big-ticket luxury items like $55,000 of jewelry, a $20,000 Polaris ATV, and $50,000 in real estate" and that the bank account "clearly served as Cruz's slush fund for his ill-gotten gains." Doggett generally argued that fiduciary duties and contractual duties required Cruz to act in Doggett's best interests and prohibited Cruz from accepting compensation from third parties during his employment. Doggett argued that the requests for production sought relevant and discoverable documents. It also argued, in part, that Cruz had effectively agreed to produce the documents at issue

4

because he "granted document inspection rights to Doggett and agreed to cooperate with any investigation" by executing the conflict acknowledgment.

On September 22, 2023, the trial court signed a forty-one page order granting Doggett's motion to compel the requests for production at issue here "to the extent that [Cruz's] . . . objections are overruled." Cruz filed the instant petition for writ of mandamus and an emergency motion to stay the trial court's order. We granted the emergency motion to stay, and we ordered the trial court's September 22, 2023 order to be stayed pending the resolution of this original proceeding. *Id.* R. 52.10(b). We requested that Doggett, or any others whose interest would be directly affected by the relief sought, file a response to the petition for writ of mandamus. *Id.* R. 52.2, 52.4, 52.8. Doggett filed a response to the petition for writ of mandamus and Cruz filed a reply thereto.

## II. STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Kuraray Am., Inc.*, 656 S.W.3d 137, 142 (Tex. 2022) (orig. proceeding)

5

(per curiam) (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam)).

### III.    TAX RETURNS

In his first issue, Cruz contends that the trial court abused its discretion by ordering him to produce "years" of federal income tax returns.[3] Cruz alleges that Doggett failed to meet its burden to obtain the federal income tax returns because it failed to submit evidence in support of its request for this discovery and thus failed to establish the documents' relevance and materiality.

Federal income tax returns are discoverable if they are relevant and material to the issues presented in the lawsuit. *Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex. 1995) (orig. proceeding) (per curiam); *Maresca v. Marks*, 362 S.W.2d 299, 300 (Tex. 1962) (orig. proceeding). However, we approach the production of tax returns with caution:

> The protection of privacy is of fundamental—indeed, of constitutional—importance. Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy. But sacrifice of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

*Maresca*, 362 S.W.2d at 301; *see Hall*, 907 S.W.2d at 494; *In re Van Haselen*, 650 S.W.3d 14, 20–21 (Tex. App.—El Paso 2021, orig. proceeding [mand. denied]). Thus, when a party objects to the production of its tax returns, the burden falls upon the requesting party

---

[3] In this regard, Doggett asked Cruz to produce "all federal income tax returns submitted to the IRS by Cruz or on Cruz's behalf" (request for production number one), "all Form 1099s issued to Cruz" (request for production number three), and "all Form 1099s submitted by Cruz to the IRS" (request for production number four). Each of these requests were limited to "tax years 2018 to 2022."

6

to show that the returns are relevant and material to the issues in the case. *In re Van Haselen*, 650 S.W.3d at 21; *Rhey v. Redic*, 408 S.W.3d 440, 458 (Tex. App.—El Paso 2013, no pet.); *In re Beeson*, 378 S.W.3d 8, 12 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding [mand. denied]). Further, the requesting party must show that the desired information cannot be obtained from another less intrusive source. *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) (orig. proceeding) (per curiam); *In re Van Haselen*, 650 S.W.3d at 21; *In re Beeson*, 378 S.W.3d at 12; *In re Williams*, 328 S.W.3d 103, 116 (Tex. App.—Corpus Christi–Edinburg 2010, orig. proceeding [mand. denied]).

Information is relevant if it has any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX. R. CIV. P. 192.3(a). "It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* We liberally and broadly construe the phrase "relevant to the subject matter" to provide litigants the opportunity "to obtain the fullest knowledge of the facts and issues prior to trial." *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding) (quoting *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009) and *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)). Nevertheless, the trial court's discretion in determining relevance is "not unlimited." *In re Kuraray Am., Inc.*, 656 S.W.3d at 142.

7

Cruz asserts that Doggett was not entitled to discovery of his tax returns because it failed to adduce evidence that the tax returns are relevant and material. We reject this contention. We evaluate the relevancy of discovery on a case-by-case basis by examining the pleadings and the claims and defenses at issue in the lawsuit. *Rescue Concepts Inc. v. HouReal Corp.*, No. 01-20-00553-CV, 2022 WL 2976299, at *11 (Tex. App.—Houston [1st Dist.] July 28, 2022, pet. denied); *In re Plains Pipeline, L.P.*, 618 S.W.3d 780, 789–90 (Tex. App.—El Paso 2020, orig. proceeding); *In re Allstate Fire & Cas. Ins.*, 617 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding). Accordingly, Doggett did not bear the burden to adduce evidence in support of its requests. *See Rescue Concepts Inc. v. HouReal Corp.*, 2022 WL 2976299, at *11; *In re Plains Pipeline, L.P.*, 618 S.W.3d at 789–90.

Doggett alleged in its first amended petition that Cruz breached his fiduciary duty, the noncompetition agreement, and the conflict acknowledgment by "running a 'pay-to-play' scheme whereby he would require vendors to pay him and/or the Cruz Entities cash in order to do business with Doggett" and "accept[ing] secret cash payments from Doggett's vendors." Doggett also alleged that Cruz acted "as an agent" of King and CHV by sending Doggett's customers to King, purchasing "salvage" trucks from King under the auspices of purchasing viable trade-ins and causing Doggett to pay invoices to CHV and King for work that was not done or for work that had already been invoiced and paid. According to Doggett, "Cruz had no financial incentive from Doggett to engage in this activity, so [King] and [CHV] must have given Cruz financial incentives to justify Cruz's behavior."

8

Both in the trial court and here, Doggett argued that its requests for production were reasonable in scope insofar as they were limited to the period when Cruz was employed by Doggett as a sales manager, and that Cruz's federal income tax returns and Form 1099s were relevant to determine the scope of Cruz's misconduct insofar as they would identify prohibited sources of income, the payors of that income, and the amounts of any prohibited payments. Doggett pointed out that this discovery was relevant to show both liability with regard to Cruz's receipt of "improper or unauthorized compensation while he was employed by Doggett," and the amount of damages that Doggett had sustained. Examining the pleadings and claims made by Doggett, we conclude that the trial court did not abuse its discretion in determining that Cruz's income tax returns for the four-year period at issue are relevant for the reasons set forth by Doggett. *See Rescue Concepts Inc.*, 2022 WL 2976299, at *11; *In re Plains Pipeline, L.P.*, 618 S.W.3d at 789–90.

Cruz contends that Doggett's request for his income tax returns amounts to a mere fishing expedition because Doggett could and did obtain the necessary information from other sources. Discovery propounded for "the purpose of finding an issue, rather than in support of an issue already raised by the pleadings, would constitute an impermissible 'fishing expedition.'" *In re Allstate Fire & Cas. Ins.*, 617 S.W.3d at 643 (quoting *In re Am. Home Assurance Co.*, 88 S.W.3d 370, 376 (Tex. App.—Texarkana 2002, orig. proceeding)). "Federal income tax returns are not material if the same information can be obtained from another source." *In re Beeson*, 378 S.W.3d at 12 (quoting *In re Sullivan*,

9

214 S.W.3d 622, 624–25 (Tex. App.—Austin 2006, orig. proceeding)). We thus turn our attention to the materiality of the income tax returns.

Here, Doggett's impetus for obtaining Cruz's federal income tax returns stems in part from Doggett's receipt and review of other discovery responses. As Doggett alleged in its motion to compel, Cruz's co-defendant King produced copies of forty-two checks dated from May 2021 to March 2022 which evidenced payments made by King to Cruz's entity JCV. In response to a subpoena, Cruz's tax preparer produced bank statements dated from May 2021 to December 2021 for a bank account held by JCV. While we agree that federal tax returns may not be subject to discovery if the same information is available from another source, *see Sears, Roebuck & Co.*, 824 S.W.2d at 559; *In re Beeson*, 378 S.W.3d at 12, we disagree with Cruz that Doggett's receipt of the foregoing discovery obviates its need for Cruz's income tax returns. The discovery that Doggett has obtained from other sources encompasses only a limited period of Cruz's employment with Doggett, pertains solely to income attributed to JCV, and does not evidence the totality of Cruz's income or that of his solely owned companies. The documents requested by Doggett would likely supply additional information relevant to its claims. *See* TEX. R. CIV. P. 192.3(a). Thus, we disagree that Doggett's request was an impermissible "fishing expedition."

We overrule Cruz's first issue.

## IV. OVERBREADTH

In his second issue, Cruz asserts that the trial court abused its discretion by ordering him to comply with requests for production which are overbroad and which include documents pertaining to third parties.

"An overbroad discovery request is, in essence, one that seeks irrelevant information." *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (orig. proceeding) (per curiam). Thus, a discovery request is not overbroad if it is "reasonably tailored to include only matters relevant to the case." *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (per curiam); *see In re Kuraray Am., Inc.*, 656 S.W.3d at 142. Accordingly, "[a] central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re UPS Ground Freight, Inc.*, 646 S.W.3d at 832 (quoting *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) (per curiam)). The party seeking discovery has the burden to show that the requested documents are relevant and therefore discoverable. *In re Kuraray Am., Inc.*, 656 S.W.3d at 142; *see* TEX. R. CIV. P. 192.3 (delineating the scope of discovery).

Under the rules of civil procedure, "[a] person is required to produce a document or tangible thing that is within the person's possession, custody, or control." TEX. R. CIV. P. 192.3(b). "*Possession, custody, or control* of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." *Id.* R. 192.7(b). "The

party seeking production has the burden of proving that the party from whom production is sought has actual physical possession or the right to obtain possession of the requested items." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 157 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding); *In re U-Haul Int'l*, 87 S.W.3d 653, 656 (Tex. App.—San Antonio 2002, orig. proceeding [mand. denied]) (per curiam). "The right to obtain possession is a legal right based upon the relationship between the party from whom a document is sought and the person who has actual possession of it." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding); *see In re Sun Coast Res., Inc.*, 562 S.W.3d at 158; *see also In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding). "[The] duty to produce is not always satisfied by producing the documents that are in the party's immediate physical possession but 'may often extend to documents in the possession of persons or entities that are not parties to the suit.'" *In re Summersett*, 438 S.W.3d 74, 81 (Tex. App.—Corpus Christi–Edinburg 2013, orig. proceeding [mand. denied]) (quoting *In re Certain Underwriters at Lloyd's London*, 294 S.W.3d 891, 903 (Tex. App.—Beaumont 2009, orig. proceeding [mand. denied])). Nevertheless, a party's "mere access" to documents "does not constitute 'physical possession' of the documents under the definition of 'possession, custody, or control' set forth in Texas Rule of Civil Procedure 192.7(b)." *In re Kuntz*, 124 S.W.3d at 184.

In terms of overbreadth, Cruz first asserts that the definitions that Doggett included in its requests for production are overinclusive. Cruz complains of the following specific definitions:

1.  "Cruz" means Defendant Juan Cruz Valladares, along with his affiliates, employees, representatives, and agents.

12

2. "Cruz Entities" means all entities for which Cruz serves as an owner, shareholder, officer, director, member, or manager, including but not limited to JCV Ventures of The Rio Grande Valley LLC, JCV Transport Services LLC, Bulldog Equipment LLC, and/or Bulldog Heavy Equipment LLC.

3. "Cruz Associates" [means] Adriana Flores, Lili Cruz Esquivel aka Lili Mercedes Cruz, Anaid Garcia Pacheco, and Ana Cabello.

4. "Doggett" means Plaintiff Doggett Freightliner of South Texas, LLC, along with its employees, agents, attorneys, representatives, and affiliates.

Cruz contends that these definitions render all twenty-eight of Doggett's requests for production overbroad. Cruz thus alleges that, for instance, the definition of "Cruz" as including his agents and employees would require him to produce the income tax returns for the attorneys who are representing him in this case and the income tax returns for his employees, if any. Cruz further asserts that according to the definition of Cruz Entities, "if [Cruz] owned Walmart or Apple stock, [he] would be compelled to produce Walmart and Apple's federal income tax returns . . . ." Cruz further asserts, for example, with regard to the definition of "Doggett" that "he has no idea what persons or entities" comprise these categories nor does he "have a reasonable way to identify all of these persons and entities." Doggett asserts, in contrast, that the trial court's order only orders Cruz to produce those documents in his possession, custody, or control.

We reject Cruz's generalized overbreadth argument as fallacious. Under the rules of civil procedure, Cruz is required to produce those documents within his physical possession or that he has a right to possess that is equal to or superior to others. *See* TEX. R. CIV. P. 192.3(b), 192.7(b). The trial court's order with regard to the foregoing

13

definitions in no way alters Cruz's burden of production under the rules. The trial court's order does not make any findings that Cruz has physical possession or a right to possession of any documents belonging to, for instance, Cruz's counsel of record, Walmart, or Apple. Ultimately, if the parties disagree regarding whether Cruz is required to produce any specific documents belonging to non-parties, relators will have the burden to show that Cruz has constructive possession or the right to obtain possession of the requested documents. *See In re Sun Coast Res., Inc.*, 562 S.W.3d at 157; *In re U-Haul Int'l*, 87 S.W.3d at 656. We leave such issues to be first addressed by the trial court in its sound discretion.

Further, to the extent that Cruz contends that he is unable to respond to requests for production because he is unable to identify his former employer Doggett's employees, agents, attorneys, representatives, and affiliates, we are quite sure that Doggett's current counsel will assist in that regard. *Id.* R. 191.2 ("Parties and their attorneys are expected to cooperate in discovery and to make any agreements reasonably necessary for the efficient disposition of the case."); *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 146 (Tex. App.—Dallas 2011, no pet.) ("The purpose of rule of civil procedure 191.2 is to ensure that parties cooperate during the discovery process and make reasonable efforts to resolve discovery disputes without the necessity of court intervention.").

We turn our attention to Cruz's contention that the discovery requests are overbroad because they require him to produce documents from third parties. Cruz's

contentions in this regard focus on the Cruz Entities[4] and the Cruz Associates.[5] In terms of the Cruz Entities, we note that there is a discrepancy in the description of this group between the pleadings and the discovery requests. In its first amended petition, Doggett included claims against JCV, Bulldog Heavy Equipment, LLC, and Bulldog Equipment, LLC. Doggett alleged that Cruz owns and operates each of these entities and requested service of process on these entities through Cruz as their registered agent. The definition of Cruz Entities in Doggett's requests for production includes these defendants and JCV Transport Services, LLC, which according to the record, is not a party to the lawsuit. In

---

[4] For the Cruz Entities, Doggett requested Cruz to produce "federal income tax returns for any and all of the Cruz Entities to the IRS for tax years 2018 to 2022" (request for production number two), "all Form 1099s issued to any of the Cruz Entities" for "tax years 2018 to 2022" (request for production number five), "all Form 1099s submitted by any of the Cruz Entities to the IRS" for "tax years 2018 to 2022" (request for production number six), "all documents and communications by and between any of the Cruz Entities and any third-party (including but not limited to [King]) reflecting any effort to do business with, call on, solicit, divert, or take away from Doggett any current or prospective customer of Doggett" for "January 1, 2021 to present" (request for production number eleven), "all internal communications of the Cruz Entities regarding Doggett" for "January 1, 2021 to present" (request for production number thirteen), "all documents and communications by and between any of the Cruz Entities and any current or former employee of Doggett relating to the sale, rental, lease, distribution, marketing, financing, service, and/or repair of heavy-duty trucks, medium-duty trucks, trailers, parts, and/or accessories" for "July 1, 2022 to present" (request for production number fourteen), and "documents and communications reflecting all gifts or other things of value (including a commission, bonus, cash payment, and/or a gift card) received by any of the Cruz Entities relating to the sale, rental, lease, distribution, marketing, financing, service, and/or repair of heavy-duty trucks, medium-duty trucks, trailers, parts, and/or accessories" including bank records for "items received from January 1, 2018 to present" (request for production number seventeen).

[5] For the Cruz Associates, Doggett requested Cruz to produce "all Form 1099s issued to any of the Cruz Associates that relate to the sale, rental, lease, distribution, marketing, financing, service, and/or repair of heavy-duty trucks, medium-duty trucks, trailers, parts, and/or accessories" for "tax years 2018 to 2022" (request for production number seven), "all Form 1099s submitted by any of the Cruz Associates to the IRS that relate to the sale, rental, lease, distribution, marketing, financing, service, and/or repair of heavy-duty trucks, medium-duty trucks, trailers, parts, and/or accessories" for "tax years 2018 to 2022" (request for production number eight), and "documents and communications reflecting all gifts or other things of value (including a commission, bonus, cash payment, and/or a gift card) received by any of the Cruz Associates relating to the sale, rental, lease, distribution, marketing, financing, service, and/or repair of heavy-duty trucks, medium-duty trucks, trailers, parts, and/or accessories" including bank records for "items received from January 1, 2018 to present" (request for production number eighteen).

the pleadings regarding the discovery dispute, Doggett has alleged that Cruz is the sole owner and operator of JCV Transport Services, LLC.

Based on this record, there is no dispute that Cruz owns and controls the Cruz Entities, including JCV Transport Services, LLC. Accordingly, the trial court did not err in implicitly determining that Cruz has physical possession of the requested documents or that he has a right to possess the requested documents that is equal to or superior to others. *See* TEX. R. CIV. P. 192.3(b), 192.7(b). We reject Cruz's contentions otherwise.

Our analysis is different regarding the trial court's order pertaining to the production of documents from the Cruz Associates. The discovery requests define the Cruz Associates as: Adriana Flores, Lili Cruz Esquivel a/k/a Lili Mercedes Cruz, Anaid Garcia Pacheco, and Ana Cabello. The trial court's order states that these individuals "are a relative of Cruz or were in a dating relationship with him during [the] subject time period." Doggett asserts that the requests for production to these individuals "would tend to show whether Cruz was using one or more of the Cruz Associates as a 'front' to either compete with Doggett or obtain compensation from Doggett's competitors, vendors, or prospective vendors as part of his pay-to-play scheme."

The Cruz Associates are not parties to this lawsuit nor do the pleadings suggest that they have any connection to the matters at issue here. The rules of civil procedure establish the method for obtaining discovery from nonparties. *See id.* R. 205. Doggett has not complied with this procedure. *Id.* And there is nothing in the record before us suggesting that Cruz has possession, custody, or control over the documents pertaining to the Cruz Associates. Doggett, as the party seeking production, has failed to meet its

16

burden of proving that Cruz has constructive possession or the greater right to obtain possession of these particular documents. *See GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729; *In re U-Haul Int'l*, 87 S.W.3d at 656. We conclude the trial court abused its discretion by granting the motion to compel regarding the Cruz Associates. *See In re Kuntz*, 124 S.W.3d at 184.

We sustain, in part, Cruz's second issue regarding the Cruz Associates, and overrule, in part, as to all other relief sought in this issue.

## V. DUE PROCESS

In his third issue, Cruz asserts the trial court abused its discretion and denied him due process by refusing to allow his counsel to present evidence and argument at the hearing on the motion to compel. Cruz argues that the trial court provided "no meaningful hearing and opportunity to be heard." Cruz specifically asserts that the trial court did not allow him to "argue his specific discovery objections" or present "evidence invalidating the . . . [conflict acknowledgement]." At the September 12, 2023 hearing on the motion to compel, Cruz's counsel explained that he wanted to present Cruz as a witness to testify that the various agreements that he signed were unenforceable. Cruz essentially argues that the trial court's order compelling discovery was entirely premised on Doggett's argument that Cruz agreed to produce the requested discovery by signing the conflict acknowledgement.

17

We reject Cruz's contentions. The reporter's record for the hearing spans fifty-three pages and illustrates that Cruz's counsel had ample opportunity to present his arguments to the trial court.[6] Cruz's counsel specifically argued, inter alia:

Your Honor, I'm putting on evidence in support of my relevance objection. I've made an objection to relevance. And the reason it's either relevant or not relevant is [Doggett's] whole lawsuit is based on these agreements. I'm going to put on evidence about these agreements in support of my relevance objection. That's why it's permissible.

. . . .

Your Honor, I made objections on the basis that these documents are irrelevant. They've got to show those are enforceable agreement[s] . . . . Otherwise, Your Honor, you're going to order discovery on an issue that could potential be unenforceable [a]nd to the extent that's why I'm putting it on.

. . . .

I follow what you're saying right now, Your Honor. But what I'm telling you I have a relevance objection to the request that we're making to—whether the court agrees with me or not, Your Honor, I want an opportunity to submit evidence in support of my relevance objection. And I'm going to establish why in my opinion it is irrelevant. That's what I want to do, Your Honor; I've got my client here to do it.

. . . .

And these subpoenas include subpoenas for tax return information that have constitutional protection. And on that basis I would request that the Court allow me to put Mr. Cruz on to testify. I mean, if you're going to rule that I can't put him on, then please make the ruling on the record so it's clear. But I have an obligation to protect my client, or my clients, and I'd like this opportunity to do it, Your Honor. And I believe that once I establish that these contracts that these various claims are based upon, that the Court will find that they're not relevant. And the Supreme Court case law says that the discovery has to be only obtained within relevant documentation.

---

[6] The trial court's order granting Doggett's motion to compel faithfully incorporates each of Cruz's written objections to the requests for production verbatim.

. . . .

> Okay. So that's the purpose of me putting Mr. Cruz on. Because I have a relevance objection, and in support of my relevance objection I'm going to have him testify about these contracts that they are asserting against him, Your Honor, in this case.

The trial court may have reasonably concluded that Cruz's proffered testimony regarding the validity or enforceability of the noncompetition agreement and conflict acknowledgement was unnecessary to the resolution of Doggett's motion to compel. In other words, based upon the pleadings alone, it would be reasonable to conclude, regardless of Cruz's proposed testimony regarding the validity of the agreements, that the requested discovery was relevant, reasonably calculated to lead to the discovery of admissible evidence, and would aid in the dispute's resolution. *See* TEX. R. APP. P. 192.3(a).

We overrule Cruz's third issue.

### VI.  CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that Cruz has met, in part, his burden to obtain relief as to discovery regarding the Cruz Associates only. The trial court abused its discretion in granting the motion to compel in this regard, and we conclude that Cruz lacks an adequate remedy by appeal to address this error. *See In re Kuraray Am., Inc.*, 656 S.W.3d at 142.

We lift the stay previously imposed in this case. We conditionally grant the petition for writ of mandamus in part and deny it in part as stated herein. We direct the trial court

19

to vacate the provisions of its September 22, 2023 order pertaining to the Cruz Associates. Our writ will issue only if the trial court fails to promptly comply.

CLARISSA SILVA
Justice

Delivered and filed on the
31st day of January, 2024.